the court well argued. We'll turn next to the case Nikola v. World Wrestling Entertainment and hear first from Mr. Kyros. Good morning, your honors. May it please the court. This is Constantine Kyros. It is my privilege to represent all the appellants, the wrestlers and their families in the cases consolidated in this appeal. The class action cases, William Albert Haynes and Russ McCullough, Evan Singleton and Vito LaGrasso individually, Joseph Laurinaitis and all the plaintiffs in that case, Cassandra Fraser and myself and my law firm. In cases as important as these, the district court found as a matter of law that the professional wrestlers and their families don't have any viable claims. This occurred in the absence of any proof, experts or weighing disputed evidence by a jury. The court reformulated key elements of the plaintiff's allegations. For example, it simply adopted an unfled 2005 date. It ignored others, specifically the allegations of WWE's actual knowledge of the long-term risks of head injuries before 2005. The court then used its own unfounded factual assumptions of the raw evidence, primarily about a single Benoit TPE press conference in 2007 to dismiss nearly all of the cases while simultaneously finding counsel violated Rule 11. In so doing, the court ignored the standards to be applied in Rule 12, summary judgment and class action analyses. The court, for the most part, adopted the opposite standards required under the federal rules, and it simply took WWE's facts to be true and ignored the wrestlers' facts and inferences, even when brightly illuminated. And the wrestlers' claims, particularly the tolling allegations, require submission to a jury. The wrestlers satisfied the elements for tolling in their fled allegations. First, we define the injury as a latent one, long-term neurological conditions and diseases, not just TPE, which is chronic traumatic encephalopathy, arising from untreated head injuries at WWE during their career. Second, we argue that the discovery date of the injury is the date of diagnosis or the awareness of the risk by the wrestler. Third, we demonstrated WWE's knowledge of these risks and the failure to disclose or act upon them. For example, WWE in 1976 held events with Detailed descriptions of the permanent effects of concussions on Monday Night Raw in 1995, sponsored boxing matches in WrestleMania 15 in 1999. These risks also included the wrestlers being induced into a course of conduct which caused detriment to them. The wrestlers also fled actual knowledge of their head injuries by WWE and WWE's focus on them in their programming. So, one side, WWE knew about these long-term risks, and the other side didn't. This is Judge Clark. I guess before getting into the merits, I'd like to ask you about on the motions to dismiss, or I guess before we even get there, I'd like to ask you about the impact of the Supreme Court's holding in Hall and the situation here with the notices of appeal. It seems to me that the Supreme Court made clear the Hall decision that there is a 30-day time limit, and that is applied to each individual case, regardless of whether they're consolidated, that they're independent appeals. And notwithstanding this court's decision earlier in this case, wouldn't we have to follow that decision of the Supreme Court? Well, I think we addressed that when WWE filed a motion to dismiss the appeal for lack of appellate jurisdiction, and I just found the argument as unresolved. I wasn't prepared to the argument there is that the issue was unresolved. I think we cited even a K&L Gates article that described that there were situations like this that invoked people that had filed appeals and then had not availed themselves, hadn't yet been given the right to their appeal. I'm sorry, Mr. Kairos, this is Judge Nardini. You're aware that the motion to dismiss was referred to this panel for consideration, correct? Yes. That motion was not denied. You understand that, right? Yes, Your Honor. And this goes to the jurisdiction of this court to decide, right? Yes, it does, Your Honor. And you were not prepared to discuss this issue? I apologize. I misspoke. I had my prepared comments, but I looked at the argument, and I really rest on what we said. I'm not sure... Well, actually, instead of resting on your papers and telling us that it's an unresolved issue, because I think the question before the court is whether we need to resolve it, right? So it's not helpful to say nobody's resolved it, right? Because here we are today, right? I mean, we may have to rule on this, right? So why should we rule in your favor and not dismiss any number of your client's claims for lack of jurisdiction? Could you explain to us why? Well, Your Honor, I think that the issue in the Hall decision was it gave the rest, excuse me, it gave the plaintiffs in that case the right to appeal. So these cases get consolidated for all purposes. And in our case, this court decided that we would have to wait until the final order came down before we took our appeal. So I felt that the argument was sort of a difficult one for looking at the rights of plaintiffs, because if they had not, you know, if they had fault, there was no way for them to follow that. We took the right of appeal with the Haynes and McCulloch cases. So, I mean, I think that once the judge issued the final decision in this case, we took a timely appeal. This is Judge Parker. Can you help me understand what exactly you want us to do on the sanctions issue? Yes, Your Honor. The sanctions issue is, you refer to the Rule 11 sanctions, Your Honor? Yes. So on the Rule 11 sanctions, the issue is, obviously, I don't feel that I violated any court orders or was somehow lying to the court for any of those things. I mean, that's pretty much a false narrative. Well, the sanctions haven't been fixed. Is that correct? I mean, no amount of money. The amounts have not been fixed, as I read the record. Did I miss something? I think what happened is that the district court, basically, it finalized the order to dismiss the case. So we had to take the appeal. So the argument was that they hadn't fixed the dollar amount on the sanctions. So I think when you look at the case law, the typical scenario— How do we get—I'm not sure why we have jurisdiction over sanctions. I mean, we have no idea how much or how little the district court believes you should be paying. Well, I believe if you look at it, the sanctions order is based on factual assumptions in the complaint, and these were never established in the record. And the judge also used those analyses to dismiss the case. So this court, I believe, can exercise pending appellate jurisdiction over the sanctions because the order dismisses the case and then issues the sanctions simultaneously. Procedurally, we had no choice but to take the appeal because the case had been dismissed and the order was issued. So we had to take the appeal. So that's the argument on the jurisdictional question. I'm sorry, this is Judge Nardini. Do you have any case supporting this notion of what you just described as pending appellate jurisdiction? Well, the— Or any statute or any rule? Where does that come from? Well, when a case is dismissed, all the elements in the case were—they were joined together in the underlying action. So the— Yeah, but not the sanctions order. I mean, don't we have cases on point in this circuit? And I'm in O&G Industries, and I'm quoting here from O&G, a non-quantified award of attorney's fees and costs is not appealable until the amount of the fees has been set by the district court. And I'm guessing, why do those cases not apply? And do you have a different case that says otherwise? Well, I think the issue, Your Honor, with all due respect is that it's not the amount, it's the order that dismisses the case. No, right. The point is it's—you're not ripe yet to order. And I'm asking you if you have a case or any authority, legal authority, supporting your position. I think it's—I don't think the question's come up. I think that what happens is that the sanctions are issued in the district court, the party takes an immediate appeal, and this circuit has said, wait, tell the whole case is dismissed, because typically sanctions are not held the case until the determination of fees. It sets the fee determination after the dismissal. So we had to take the—we had to take the appeal when we did, because otherwise, if we had waited for the amount to be determined, then we wouldn't have been able to appeal, because the order dismissed the case and issued the sanctions simultaneously. Procedurally, the sanctions had some problems. The state harbor provisions were not followed. It was—and this—I mean, this is in the record. The brief describes that the Rule 11 was referred to Judge Richardson, who made no ruling. Under 28 U.S.C. Section 636B, once a judge refers a magistrate judge in a hearing for a proposed finding of facts and recommendations, this addition to this judge procedurally—it looks like the code requires the judge to file proposed findings and recommendations, and the parties then have 14 days to object to them. So although a hearing took place, the magistrate judge failed to file any recommendations to a court. Therefore, I submit that the Rule 11 sanctions were procedurally improper. And certainly— Thank you. Thank you. You've reserved two minutes for rebuttal. We'll hear from Mr. McDevitt. Here we are. Good morning, Your Honors. Jerry McDevitt representing WW and Mr. McMahon and all the cases. Your Honor, I intend to spend my time talking about three main issues—jurisdiction on the sanctions appeal, jurisdiction on the individual appeals other than the Laurinaitis case, which we concede jurisdiction is proper on, and then tolling issues related to the personal injury tort claims. Before I do, Your Honor, I think it's important to say a couple things about what is not at issue in the appeal, given the way the briefing went in. There are no negligence claims on appeal. They did not take any issue with the dismissal of those negligence claims in the earlier cases, and none was pled in Laurinaitis. In the reply brief, there's an awful lot of talk about WW's alleged fiduciary duties, but I think it's important to point out there's never been a breach of fiduciary duty claim in any complaint, and that such claims, even if they had been brought, would be barred by the same three-year statutes as are at issue. There's also a lot of talk about royalties in the reply brief. There's never been any claim in any case that the WW has not paid these performers every dime that it owes them in royalties under the contracts it has with them. We've also noted the various claims that have been dismissed, which no challenge has been made to in the briefing, and I think it's important to point out, Your Honors, that there's four plaintiffs who have passed away since this case began, with no substitution by their estate, despite notice to the Plaintiffs' Council. That's Mr. Heaton, Mr. Pallese, Ashley Massaro, Larry Oliver, and one other, Sylvan Vernier, who withdrew his appeal. With those preliminaries out of the way, Your Honor, if I could turn to the sanctions orders that the Court was questioning Mr. Kairos about. There are actually two sanction orders, and it is undisputed that the District Court has not determined the amount of counsel fees in either. One was a Rule 37 sanctions order issued by Magistrate Richardson and affirmed by Judge Brine, where Mr. Kairos disobeyed a compulsion order to answer interrogatories which were designed to flesh out a pattern of baseless allegations, and the second one was two Rule 11 sanctions that were issued in the Laurinaitis case, and it is undisputed that no hearing has been held to fix the amount of the sanctions in those cases. Our brief cited four Second Circuit cases which consistently hold that orders which do not fix the amount of sanctions are not final and which dismisses appeals of such orders. They have not, as the Court has inquired on Mr. Kairos, established or cited a single case for authority that appeals proper at this time, and they made no attempt to distinguish the authority that we cited. In short, we think that is a foreclosed appeal at this time. On the substantive appeals, Your Honor, as we said, our position is that only Laurinaitis is properly before the Court. When the Hall case came down, the answer of what Mr. Kairos and his counsel did was precisely nothing. In fact, the Hall case was decided on exactly the same day that summary judgment was granted in one of the underlying cases, the Lagrasso-Singleton case, which could have been immediately appealed by virtue of the Hall decision, and they did nothing. They did not appeal that timely, and they waited until all the cases were done to appeal. Our case is... Mr. Judge Park, could I ask you about the... I guess it's the Haines and the McCullough actions. When should they have filed their appeals in those? I think, Your Honor, our position on that is when Hall was decided, what they should have done at that point is exercise reasonable diligence and move to withdraw the mandate, which they didn't do anything. But even at Hall, that was still well past the 30-day time limit, right? I guess my question is, and maybe this is academic, but would there have been jurisdiction then? Would we have had jurisdiction then within, say, 30 days of Hall coming down? I don't think so, Your Honor, because I think what they indicate in the cases that we have is that jurisdictional rulings can never be made prospective, and they have to be applied essentially retroactively. And there are no, according to the Supreme Court jurisprudence on this, particularly the Bowles case that we cited, those time limits are mandatory and jurisdictional, and they overruled in Bowles the prior unique circumstances exception to the rule. So I don't think any of those cases properly could have been appealed after Hall, other than Singleton, which they could have appealed very easily, and there would have been no objection. Sure. Yeah, I understand your argument as to those after Hall. But as to the earlier ones, it seems like a harsh result. When they initially filed, we told them it was premature, and then there was Hall, and then it was too late. Well, Your Honor, there's essentially the Haynes-McCullough decision is subject to that, and the second one that they missed on is Frazier, which I would point out is, to the extent the merits matter, is a wrongful death claim of its time barred anyway, and it's by a man who died in the shower of a heart attack six years after he last performed for WWE, which is one of the more, shall we say, fanciful claims of the case. And then on the subject of the court's prior ruling, they could have appealed that and didn't. So I think what they really should have done was come back to the court and ask, on a diligent basis, to withdraw the mandate in Haynes-McCullough and ask the court to reinstate the appeal, but they didn't do anything. And frankly, Your Honor, when we pointed all these out in the brief, they really didn't present any opposing argument to it, and most of the other lawyers that were on the case withdrew their appearances from the appeal because I think they realized the appeal was improper. This is Judge Nardini. Can I ask you, in your view, taking your view of the effect of Hall, are we obligated to consider first whether we have jurisdiction and therefore to dismiss any of these cases that, in your view, are untimely? Or would we have authority to assume for the sake of argument that we had jurisdiction, and then if we were to agree with all of your merits positions as to the timeliness or the lack of fraudulent concealment and tolling and that sort of thing, would the court have authority to do that? Or is it your view that we have no authority to basically rule on alternative grounds, that the ground, if the jurisdictional ground applies, we must and have no discretion otherwise than to apply that first? What's your view on that? I think the best guidance I can give, Your Honor, that is the Firestone decision, where the Ninth Circuit had reversed prior law holding that attorney disqualification decisions could be immediately appealed and held that such rulings could not be appealed, but then went on to review the merits of the case. The Supreme Court, in that case, indicated that the DQ order was not appealable, and they agreed with that, but then held it was error to go ahead and decide the merits since the court had no jurisdiction. So I think that's the best answer I can give to the court. And I think you touched on this. I'm sorry, go ahead, Mr. Judge. I think you mentioned this, but I just want to be sure I'm clear on it. It's your position that the only proceeding that we have jurisdiction over is which one? The Lower Ninth's case, Your Honor, the last one that was dismissed by the judge. It was the mass action case that has 60-some different plaintiffs in it. And this is Judge Nardini again. Would you agree that we would have authority, whether or not we exercise it is another question, but we at least have authority to consider whether to recall the mandate in whatever those first cases were. Was that Haynes and McCullough? No, yes, Your Honor. Haynes and McCullough were the first two cases that were subject to the court's prior mandate. Okay. But then is there any other equitable doctrine, perhaps not applicable in this case? Because keep in mind that if we make some sort of precedential ruling, it would apply across the board. Do you think that there are any other equitable or other doctrines out there that perhaps other parties would be able to invoke if they declined to take a timely appeal under your version of Hall during the period before Hall was decided, but after McCullough was decided? In other words, parties that thought they were following circuit precedent to the letter and it turned out they were wrong. Are you aware, is there any equitable doctrine out there that they would be entitled to invoke? Again, regardless of whether your adversary is entitled to, is a different question. Your Honor, I haven't researched this. The most honest answer I can give you is no. And again, I think if the court reads the Bowles case again, which was a case there where it's somewhat similar, where the trial judge had given a party time 17 days to appeal under 28 U.S.C. 2107C instead of the mandatory 14 days. And the party complied with that order. And the court held there that taking the time that was mandatory and jurisdictional and overruled a prior line of cases by the Supreme Court that there was a quote unquote unique circumstances exception to the rule where this fellow had complied with court's order, but still was outside the time period allowed. So I think the only answer I can give you, Your Honor, I have not found any doctrine. I don't really have much time. I think she said I have one minute left, Your Honor. And on the tolling issues, the only thing I guess I have to say is a couple of points is one, the diligence finding by the court, I think is pervasive as to everything. I mean, here we had a situation in 2007 where there was massive publicity. It was not the single Benoit press conference, which Mr. Cairo has said about a wrestler being diagnosed with CTE that was everywhere, everywhere in the business, everywhere across the country. It was a sensational story that gave everybody notice of this idea that you can sustain these permanent degenerative conditions from head trauma such that nobody could claim that the statute was told for that. There's other flaws in the tolling arguments that they presented, Your Honor. They don't make any attempt to plead for each individual act within the time period of the statute that was running, which is three years for the regular court claims, five years for the wrongful death claims. They have the same theory for what the subsequent wrong is, is the same thing as the initial wrong when you get to the special relationship aspect of continuous course tolling. That is not the law. It cannot be the same. It must be something different. So I think, Your Honor, these claims in closing show why Connecticut has this reposed statute. Some of these claims were time barred literally when Richard Nixon was the president or Jimmy Carter was the president. These things have been time barred for decades and there was no attempt to separate any of them out. There was only one claim that was brought that wasn't time barred. That was Mr. Singleton's and the court found that was merit. And since my time is up, Your Honor, I'll have to rely on our brief for the rest. Thank you, Your Honor. Thank you, Mr. Kairos. You have two minutes. Thank you, Your Honor. With respect to the Hall decision, briefly, I would say that if this court were to foreclose the appeals in the earlier when we took we took those appeals and the mandate is applied, that they would restructure the entire 42-A framework and could create a lot of issues. With respect to the tolling arguments, taking what Opposite Couch just said about Richard Nixon's tenure in office, the Ohio Supreme Court in the Schmidt versus NCAA case, in fact, uses Judge Bryant's opinion to deny the NCAA's motion to dismiss for a college football player from the 1970s diagnosed with a latent neurological disease in 2012. Since Judge Bryant correctly ruled in LaGrasso that being hit in the head or having a concussion doesn't trigger the S.O.L. for the disease claims, had Judge Bryant applied this tolling doctrine to the latent disease allegations in the Laurent-Idas and followed along with reasoning on tolling, then the rest of his claims wouldn't have been dismissed and there wouldn't have been any rule of sanctions issues. So, for example, if the court- You have a minute left. If the court had applied the discovery of harm to the Laurent-Idas plaintiffs, including the estate of Jimmy Snooker, who is likely the most recognized athlete in the world diagnosed with chronic traumatic encephalopathy, his case and the other plaintiffs wouldn't have been dismissed and there would be no sanctions. With respect to Haines and the Rule 23 plaintiffs, the cases wouldn't have been dismissed either. The judge simply dismisses the claims and dismisses all the class allegations with no analysis or rationale whatsoever. Instead, the judge dismissed the case based on its unfled 2005 date. Just looking at the allegations in the complaint that allege 1920s, 1950s, and so forth, the uncontested fact also is that the class rep, Matt Wiese, in the McCullough case wrestled in 2005. So, this is just clear error in the dismissal of all those class claims. And, you know, I would just say in conclusion, really that these wrestlers have very little power and they ensured that their brains would be studied to help all the other wrestlers with people like Dr. Amal who demonstrated to anyone who looks that they actually have PTE and diseases like this. And we hope the wrestlers who remain on this case, because too many have passed away, without seeing their day in court. And I stood by this case because I really believe that there are laws and institutions are here to protect people. And I'm honored to have the opportunity to speak to these people that have no voice. Thank you. Thank you. Thank you, counsel. Thank you. We'll take the matter under advisement.